UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL MCNEIL,

     Plaintiff,

vs.

ORTIZ SINGH, M.D., *ET AL.*,

     Defendants.

Case No. 1:12-cv-01005-RRB

**<u>DISMISSAL ORDER</u>**

Michael McNeil, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983. McNeil is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), incarcerated at the Valley State Prison, Chowchilla. The Complaint arises out of McNeil's incarceration at the Pleasant Valley State Prison ("PVSP"), the California State Substance Abuse Treatment Facility ("SATF"), and California State Prison, Corcoran ("CSP-C").[1]

---

[1]    In addition to Dr. Singh, McNeil has named as defendants: Matthew Cate, Secretary CDCR; J. Clark Kelso, Receiver CDCR; James Yates, Warden PVSP; Kathleen Allison, Warden SATF; Connie Gibson, Warden CSP-C; L. D. Zamora, Chief CPHCS; A. Lonigro, CEO-HCS, PVSP; Ravogot Gill, M.D. CSP-C; T. Byers, Physicians Ass't SATF; Dr. Onyeje SATF; Dr. Igbinosa, PVSP; J. Ruff, Psychologist CSP-C; C. Hammond, Appeals Examiner; D. Foston, Chief Office of Appeals; C. McCabe, M.D. CSP-C; Jeffrey Wang, M.D. CSP-C; Teresa Macias, CEO CSP-C; C/O W. Morris, PVSP; C/O Catlett, PVSP; Associate Warden Stearman, PVSP; D. Artis, Appeals Examiner; R. H. Trimble, Warden
(continued...)

I.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3] Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

---

[1](...continued)
(A) PVSP; Sgt. T. Cerda, PVSP; Sgt. S. Hosman, PVSP; J. Buckley, Associate Warden PVSP; E. Eddings, Correctional Counselor; Nesbit, Appeals Coordinator PVSP; Martinez, Appeals Coordinator PVSP; Dr. Duenas, PVSP; Tingley, CCII PVSP; Dr. Taherpour, PVSP; Dr. Park, PVSP; Dr. Nyguyen, PVSP; C/O Macado, PVSP; C/O Gann, PVSP; Bob Brawn, Physical Therapist CSP-C; Stephen Chabak, Physical Therapist PVSP; LVN Ayoctele, SATF; E. Clark, MD CSP-C.

[2]    28 U.S.C. § 1915A(a).

[3]    28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4]    42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules).

[5]    *See Booth v. Churner*, 532 U.S. 731, 734 (2001).

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[9] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's

---

[6]     Fed. R. Civ. P. 8(a)(2).

[7]     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[8]     *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[9]     *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## II.  GRAVAMEN OF THE COMPLAINT

McNeil filed an 89-page, 365 paragraph Complaint setting forth his medical history commencing in 1989 through April 2012.  McNeil suffered a severe back injury in 1989 and another injury to his neck in 1993.[13] McNeil was arrested in 1998, sentenced to life imprisonment in April 1999, and committed to the custody of CDCR in November 1999. McNeil contends that the Defendants in this case are indifferent to his serious medical needs in violation of the Eighth Amendment [First Cause of Action]. Specifically, McNeil contends that Defendants have refused to either prescribe effective pain medication or treat his medical condition by surgery. McNeil also

---

[10]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

[11]    *Id.*

[12]    *Id.* (quoting *Twombly*, 550 U.S. at 555).

[13]    McNeil appended 194 exhibits, totaling 863 pages to his Complaint.

alleges a violation of his Fourteenth Amendment right to confidentiality of his medical records [Second Cause of Action].[14]

## III. OTHER PENDING LAWSUIT

McNeil has pending in this Court an earlier "deliberate indifference" action brought under 42 U.S.C. § 1983, *McNeil v. Hayes*, 1:10-cv-01746-AWI-SKO ("*McNeil I*"),[15] arising out of McNeil's incarceration at SATF between August 2000 and September 2009. In that action, McNeil named the medical personnel at SATF.[16] After screening,[17] the Court directed service of the Second Amended Complaint in that action as against Defendant Hayes, Raman, Soto, Byers, Does and Rotman on McNeil's Eighth Amendment medical care claims.[18] The claims against the other Defendants were dismissed for failure to state a cause of action.[19]

---

[14]   The Complaint is missing pages 21, 22, 25, 45, and 50. Because it is unlikely that if those pages were included it would materially alter the outcome of the screening, the Court has determined it unnecessary to require Plaintiff to submit the missing pages at this time.

[15]   This Court takes judicial notice of that action. Fed. R. Evid. 201.

[16]   In addition to LVN Hayes, Mcneil sued Dr. Raman, Dr. Rotman, Dr. Enenmoh, T. Byers (Physician Ass't), G. Miller (Health Care Coordinator), RN Soto, RN Guiteras, RN Villasno, RNII D. Capra, and John/Jane Doe.

[17]   *McNeil I*, 1:10-cv-01746 at Docket 19.

[18]   *Id.* at Docket. 22.

[19]   *Id.* at Docket 19.

## IV.   DISCUSSION

### A.   First Cause of Action
### [Deliberate Indifference/Retaliation]

McNeil's First Cause of Action may be divided into five categories: (1) against those sued in their supervisory capacity; (2) arising out of his first incarceration at SATF (through September 22, 2009); (3) arising out of his incarceration PVSP after transfer from SATF (September 22, 2009 thru March 9, 2011); (4) arising out of his incarceration at SATF after retransfer from PVSP (March 9, 2011 through May 16, 2011); and (5) arising out of his subsequent incarceration at CSP-C (after May 16, 2011).

#### 1.   Supervisory Defendants

Section 1983 suits do not support vicarious liability; a plaintiff must demonstrate that each defendant personally participated in the deprivation of his or her rights.[20] To impose liability on a supervisor, the supervisor's wrongful conduct must

---

[20]      *Iqbal*, 556 U.S. at 677; *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691-95 (1978) (rejecting the concept of *respondeat superior* in the context of § 1983, instead requiring individual liability for the violation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Citations omitted)).

be sufficiently causally connected to the constitutional violation.[21] That is, the official must "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[22]

> A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (*Johnson*) (emphasis added). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. [Citations omitted.][23]

A review of the Complaint reveals that it does not meet that standard as to: Matthew Cate, Secretary CDCR; James Yates, Warden PVSP; Kathleen Allison, Warden SATF; Connie Gibson, Warden SATF; J. Buckley, Associate Warden PVSP; and J. Clark Kelso, Receiver CDCR.

---

[21]    *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (*abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

[22]    *Id.* (internal quotation marks and citations omitted).

[23]    *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoted with approval in *Tennison v. City and County of San Francisco*., 570 F.3d 1078, 1096 (9th Cir. 2009)).

## 2.   First Incarceration at SATF

The present posture of this case and *McNeil I* requires this Court to determine whether this case is duplicative of *McNeil I* and, therefore, should be dismissed or disregarded, as appropriate. "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant.'"[24] In such a case, "[a]fter weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay the action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions."[25]

> To determine whether a suit is duplicative, we borrow from the test for claim preclusion. As the Supreme Court stated in *The Haytian Republic,* "the true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." 154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894); *see also Hartsel Springs Ranch,* 296 F.3d at 987 n. 1 ("[I]n the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion."); *Curtis,* 226 F.3d at 139-40 ("[T]he normal claim preclusion analysis applies and the court must

---

[24]   *Adams v. California Dept. of Health Svcs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (7th Cir. 1977) (en banc)).

[25]   *Id.* (citations omitted).

assess whether the second suit raises issues that should have been brought in the first."); *Davis v. Sun Oil Co.,* 148 F.3d 606, 613 (6th Cir.1998) (per curiam) (referring to the doctrine against claim-splitting as "the 'other action pending' facet of the *res judicata* doctrine").

Thus, in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same. *See The Haytian Republic,* 154 U.S. at 124, 14 S. Ct. 992 ("There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis, of the relief sought must be the same." (internal quotation marks omitted)); *Curtis,* 226 F.3d at 140 (holding that the trial court did not abuse its discretion in dismissing "*Curtis II* claims arising out of the same events as those alleged in *Curtis I,*" which claims "would have been heard if plaintiffs had timely raised them"); *Serlin,* 3 F.3d at 223 ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." (internal quotation marks omitted)).[26]

The Ninth Circuit then laid down the following "same causes of

action" test:

We examine first whether the causes of action in Adams's two suits are identical. To ascertain whether successive causes of action are the same, we use the transaction test, developed in the context of claim preclusion. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 871 (9th Cir.1992) (citing Restatement (Second) of Judgments § 24(1) (1982)). In applying the transaction test, we examine four criteria:

---

[26]      *Id.* at 688–89.

> (1) whether rights or interests established in the
> prior judgment would be destroyed or impaired by
> prosecution of the second action; (2) whether
> substantially the same evidence is presented in the
> two actions; (3) whether the two suits involve
> infringement of the same right; and (4) whether the
> two suits arise out of the same transactional
> nucleus of facts.

*Costantini v. Trans World Airlines,* 681 F.2d 1199,
1201–02 (9th Cir.1982). "The last of these criteria is
the most important." *Id.* at 1202.[27]

The claims in *McNeil I* and the allegations in this case
covering the period prior to McNeil's transfer to PVSP overlap.
The Court notes that because it does not designate any individual
as a defendant or otherwise seek any relief in connection thereto,
this appears to be for the most part superfluous background
information. On the other hand, to the extent that McNeil may be
seeking relief based upon the events occurring during that period
of incarceration, it is duplicative of the pending action and must
be disregarded in this case.

### 3.   Incarceration at PVSP

In addition to his Fourteenth Amendment invasion of privacy
claim (Second Cause of Action discussed below), McNeil alleges that
certain correctional officers retaliated against him for filing an
inmate grievance by wrongfully "influencing" PVSP medical staff to

---

[27]     *Id.* at 689.

discontinue McNeil's pain medication.[28] McNeil initiated a grievance, which was handled at the First Level.[29]

> In your appeal you claim on November 11, 2010, you carried a 70 lb. punching bag to the workout area and had help hanging it up. You state you proceeded to do a Martial Arts workout for about 10 minutes before Correctional Officer Morris called you to the Observation Post and informed you that you were misusing the bag as Martial Arts are not allowed to be practiced. You state you received a CDC 128-B, Informative Chrono, on November 16, 2010, authored by Officer Morris which you claim is an attempt by Officer Morris to use his influence to manipulate medical staff into discontinuing your pain meds.

> You request the CDC 128-B authored by Officer Morris be removed from your Central File (C-File) and that the practice of Correctional Staff being allowed to use their unqualified medical observations to stop. You state this CDC 602 is Officer Morris' notice that if your pain meds are discontinued based on his observations you will file suit alleging violation of your 8th Amendment right to exercise and pain relief.

> During the interview, you stated you will withdraw your appeal if Officer Morris will remove the CDC 1288 out of your C-File. You also state if your request is not met, you will fight this issue in the courts. I advised you Officer Morris was within the scope of his duties and has the right to observe and document any misuse of the exercise equipment.

> Effective communication was established by speaking the English language in a manner using simple, non-complex

---

[28] The Court also notes that in his Complaint McNeil acknowledges that he persistently "threatened" correctional officers as well as medical personnel with being sued if they did not comply with McNeil's demands.

[29] Authored by Defendants Sgt. Cerda and Associate Warden Spearman.

words to make sure McNeil understood the process. McNeil was able to respond to all questions, understand·the interviewer's recommendations and explain in his own words the interviewer's decision.

A thorough review of your appeal issue was conducted. The California Code of Regulations (CCR), Title 15, Section 3000, states, "General Chrono means a CDC Form 128-B which is used to document information about inmates and inmate behavior. Such information may include, *but* is *not limited to,* documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or service matters." Officer Morris acted within the scope of his duties.

Considering the above information, your appeal is PARTIALLY GRANTED on the first level of review. Your request to have the CDC 128-B authored by Officer Morris removed from your C-File is GRANTED. The original CDC 128-B was never placed in your C-File and has been attached to this CDC 602. Your request for the practice of Correctional Staff being allowed to use their unqualified medical observations to stop is DENIED. A CDC 128-B is a General Chrono that can be utilized to document Staff observations; however, specific medical information should not be referred to in those chronos. A new CDC 128-B has been submitted and will be placed in your C-File. A copy of this CDC 128-B is also attached to this CDC 602.[30]

Although McNeil sought review at the Second Level, which was denied by Warden Trimble,[31] it does not appear that he exhausted this claim by seeking further review at the Director's Level.

---

[30]     Docket 1-2 at 162-63.

[31]     Docket 1-2 at 154-55.

McNeil further alleges that C/O Morris, at the request of C/O Catlett video-taped McNeil exercising and hitting a punching bag. McNeil also alleges that C/O Catlett attempted to influence Drs. Park and Taherpour by pointing out to them McNeil's activities. McNeil alleges that Dr. Park refused to continue his prescription for pain medications (morphine/gabapentin) based upon the reports made by correctional staff. According to McNeil, also based upon these reports Dr. Taherpour recommended to the Pain Committee that McNeil not be given morphine/gabapentin.

McNeil exhausted his administrative remedies on these claims.[32]

**DIRECTOR'S LEVEL DECISION:**
Appeal is denied.

**ISSUES:**
Your CDCR 602-HC indicated you wished to make a staff complaint against all members of the Pleasant Valley State Prison Medical Authorization Committee and the Pain Committee from November 11, 2010 to the present, as well as several named staff members, and the complaint was based upon your contention that correctional officers (COs) influenced medical staff to discontinue your morphine by reporting you carried a heavy punching bag across the track, hung it up on the bag rack, and punched it. You told officers if your medication was discontinued because of that report you would sue them. You stated your constitutional rights were violated.

You requested the following:
  • A sum of $500,000.00 to settle out of court;

---

[32]    Authored by Defendant L.D. Zamora.

- An investigation to be conducted regarding custody staff having access to inmate medical information in violation of the law.

**PRIOR APPEAL HISTORY:**

Informal Level:
The informal level appeal was bypassed and your appeal was elevated to the first level of review.

First Level:
At the first level, submitted on January 30, 2010, you staled your issues and requests as noted above.

The First Level Response (FLR) stated your appeal was partially granted and indicated you were seen by the doctor on January 27, 2011, and were advised that morphine and gabapentin were no longer medically indicated, and a taper off period was initiated. The doctor said she had asked custodial staff for assistance in observing inmates due to her limited presence on the yard. There was no evidence discovered which revealed unprofessional or inappropriate behavior by medical or custodial staff. The CDC 128-B noted the COs observations, not his opinion of your medical status; your doctor made the decision based upon her examination and other pertinent data; and you would be ducated by the appeals pain review team at Pleasant Valley State Prison (PVSP) to interview you about your alleged need for a pain management program, and to have the opportunity to rebut your PCP's decision to terminate your current pain medicine regimen. The FLR concluded monetary damages were denied and not within the jurisdiction of the department.

Second Level:
At the second level, submitted on March 4, 2011, you slated you were dissatisfied; you were seen by another doctor two weeks after your medications were discontinued; he recommended you to the pain committee; you had declarations of witnesses; and you asked who told the officer you took morphine for pain, and stated you never signed a release.

The Second Level Response (SLR) stated your appeal was partially granted, reiterated the findings of the FLR,

and further stated you were no longer a patient of PVSP; you were encouraged to engage the medical services of your new institution; your appeal did not meet staff complaint criteria; your request to exhaust remedies and seek litigation contradicted the purpose of the appeals process; and this appeal served as an inquiry into your complaint.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
At the Director's Level of Review (DLR), submitted on May 2, 2011, you state you have never refused treatment; you have refused medications you believe to be harmful; you were properly diagnosed and treated until custody staff interfered and influenced PVSP medical staff.

At the DLR, your appeal file and documents obtained from your Unit Health Record were reviewed by staff who determined your care related to your appeal issues was adequate as you received medical treatment and medication was provided, and your concerns were appropriately addressed at the FLR and SLR. Your current pharmacy profile shows active orders for the medications acetaminophen and ibuprofen, and is indicative of ongoing medical assessment of your pain.

This review found no evidence of violation of your constitutional rights as you allege. Your request for investigation of custody staff is outside the scope of the health care appeals process.

The Department shall provide only medical services for patient-inmates that are based on medical necessity and supported by outcome data as effective medical care.  In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective tor the purpose and is supported by diagnostic information and consultations with appropriate specialists. You will continue to be evaluated and treatment will be provided based on your clinician's evaluation, diagnosis, and recommended treatment plan, in accordance with appropriate policies and procedures.

Inmates may not demand particular medication, diagnostic evaluation, or course of treatment.  The California Code of Regulations (CCR), Title 15, Section 3354, Health Care Responsibilities and Limitations, (a) Authorized Staff, states, "Only facility-employed health care staff, contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted within the scope of their licensure, to diagnose illness or, prescribe medication and health care treatment for inmates.  No other personnel or inmate may do so."

Monetary Compensation is beyond the scope of the appeals process. If you are dissatisfied with this response concerning your request for monetary compensation, you may wish to contact the California Victims Compensation and Government Claims Unit, P.O. Box 3035, Sacramento, CA 94812-3035.

After review, there is no compelling evidence that warrants intervention at the Director's Level of Review as your medical condition has been evaluated by licensed clinical staff and you arc receiving treatment deemed medically necessary.

**RULES AND REGULATIONS:**
The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures (2011); and the Department Operations Manual.

**ORDER:**
No Changes or modifications are required by the institution.

This decision exhausts your available administrative remedy within the CDCR.[33]

McNeil's contention that correctional staff was attempting to

influence medical decisions is pure conjecture.  More importantly,

---

[33]    Docket 1-2 at 185-87.

to the extent that the actions of the correctional officers in reporting McNeil's activity "influenced" the decisions of medical personnel, that action was not only proper but, as explained in the First Level response, required.[34] Accordingly, the claims against the correctional officers will be dismissed for failure to state a cause of action.

McNeil's contentions *vis-a-vis* PVSP medical personnel stands on a somewhat different footing. In addition to Drs. Park and Taherpour, McNeil contends that Dr. Singh refused to continue McNeil's prescriptions for morphine and gabapentin.

After he was transferred to CSP-C, McNeil initiated a second administrative appeal challenging the actions taken at PVSP. On that appeal, the Second Level held:[35]

> **ISSUE:**
> In your CDCR 1824 (changed over to 602HC), dated February 10, 2011, you write you suffer from DDD and carpal tunnel syndrome. You state you were accused of manipulating medical staff for morphine. The discontinuance of your Morphine was based on a video tape of you exercising using a punching bag. You write you have documentation the doctor ordering you to exercise. You feel your 8th Amendment Rights are being violated. You are in pain.

---

[34]   The Court also notes that at no point in his voluminous Complaint does McNeil contend that the observations were false or that the video tape either did not exist or was incorrectly described.

[35]   Authored by Defendants Dr. Wang and Teresa Macias, CEO.

You request on appeal to be put back on your pain medication and allowed to exercise in lieu of surgery without further interference by both custody and medical staff.

First Level Response (FLR) was *partially granted.*
In your appeal to the Second Appeal Level in Section F of the CDC Form 602-HC, Inmate/Parolee Health Care Appeal Form dated May 2, 2011, you state you are dissatisfied with the First Level Response (FLR) because you transferred to another institution before the issue was resolved at PVSP.  You are still in pain.

**INTERVIEW:**
You were interviewed at the First Level Review via telephone by NP Birring, on April 7, 2011 regarding this appeal.

Effective communication:  TABE score is 12.9.
[X]  No special accommodations required for effective communication.

**REGULATIONS and BASIS FOR DECISION:**
The rules governing the issue(s) are taken from the California Code of Regulations (CCR) 3350, 3350.1, 3350.2, 3354, The Department Operations Manual (DOM), California Prison Health Care Services (CPHCS), CSP-Corcoran's Operational Procedures (OP}, and the Unit Health Care Record of McNeil P59685.

**APPEAL RESPONSE:**
There are no new medical issues presented in your second level appeal. We have revisited the concerns and requests of your First Level issue and found no new information to alter our findings. You arrived to CSP Corcoran on May 16, 2011 from SATF.  You arrived to SATF from PVSP on March 9, 2011. You were interviewed by FNP Birring of PVSP on April 7, 2011.

In your appeal you make reference to having copies of x-rays, MRIs and nerve conduction studies.  Yet you failed to attach them to the appeal.  We find very little information that is current within your UHR regarding the tests you mention. We went through both volumes 2 and 3

of 3 and found a MRI of your neck done in 2008. It shows **mild** degenerative disc disease. This is not unusual to find because DDD is considered a part of normal aging. This hardly merits Morphine for pain control. No other current reports found. To be fair to you we saw you were being seen on June 16th by Dr. Gill so we asked him to evaluate you regarding the issues in this appeal. He found you to be healthy in appearance. You were able to dress and undress with ease. There is no muscular atrophy noted.  Your hand grips are good, muscle strength is 5/5 in all four extremities. Normal gait with no noted limp. You were able to comfortably get up on the examination table without any help. Deep tendon reflexes on the patella are 2/4 bilaterally. Achilles reflex is present You had good planter flexion and dorsiflexion bilaterally. You did have some superficial tenderness to light touch on the left cervical and also on the left head. Axial loading was positive. You were complaining of low back pain. You were able to raise your left and right leg. Distracted strait leg raise was negative. You did have a minor overreaction to light touch during the examination on the right lumbar area and also on the axial loading. His conclusion, no physical examination findings were consistent with any acute finding of cervical or lumbar pain which you were complaining about. You stated you have documentation that a doctor ordered exercise, yet you failed to attach documentation that this information exists and if it does, what type of exercise was ordered (punching bag?). Combining the current examination findings, with the previous report of exercising while at Pleasant Valley State Prison, we conclude, justification for the tapering of Morphine as a pain medication for you. You wrote in your appeal that you should be allowed to have both pain medications and exercise in lieu of surgery. Mr. McNeil, we failed to find any reference to you needing surgery. Quite frankly, with the examination findings by Dr. Gill, surgery is not indicated. According to the matrix used to determine pain medications and appropriate actions, you do not meet the standards for a justified order of morphine. You currently have Tylenol and ibuprofen; these are appropriate pain medications for mild DDD.

1)   Morphine is *denied.*
2)   To be given pain medication (Tylenol and ibuprofen)
and be allowed to exercise without staff interference in
lieu of surgery is *granted.*

It is noted in your UHR and in this appeal that you
intend to file a lawsuit. We respect your right to do so.
However, we will not tolerate threats. The California
Code of Regulations (CCR} Title 15, Section 3013,
Unlawful Influence, states "Inmates may not attempt to
gain special consideration or favor from other inmates,
employees, institution visitors or any other person by
the use of bribery, threat or other means."

This includes the threat of lawsuit. If you believe you
will be granted morphine by threatening staff with civil
action, you are sorely mistaken.  We will not be
intimidated by such behavior and if it persists,
progressive discipline will be seriously considered.

The health care of inmates is one of the highest concerns
of this department.  This institution endeavors to
provide appropriate medical care and treatment
commensurate with community standards for health care.

**DECISION:**
Based on the above information, your appeal is <u>PARTIALLY
GRANTED</u> at the Second Level of Review.

If dissatisfied, you may submit this appeal at the
Director's Level for Review within 30 working days of
receipt of this response (CDC 3084.6). For the Director's
Review, submit all documents to: Department of
Corrections and Rehabilitation, Office of Third Level
Appeals-Health Care, P.0. Box 4038, Sacramento, CA 95812-
4038.[36]

McNeil's further appeal to the Director's Level was also denied.[37]

---

[36]     Docket 1-3 at 14-16.

[37]     Authored by Defendant L.D. Zamora.

**DIRECTOR'S LEVEL DECISION:**
Appeal is denied.

**PATIENT/INMATE ISSUES:**
Your CDCR 1824 Reasonable Modification or Accommodation Request form submitted on February 10, 2011, was converted to a CDCR 602-HC Inmate/Parolee Health Care Appeal form, as it did not meet the criteria to be processed as a CDCR 1824; you indicated that on January 26, 2011, you saw Dr. Sing [*sic*] who told you that you were observed using a punching bag; you had doctor orders to exercise.

You requested the following: to be put back on your previous pain medications [morphine] and to be allowed to exercise in lieu of surgery without further interference by both custody and medical staff.

**INSTITUTION DECISION:**
Second Level:
The Second Level Response (SLR) stated your appeal was partially granted indicating:
- You made reference to having copies of x-rays, Magnetic Resonance Imaging (MRI's) and nerve conduction studies which were not attached to the appeal; and were not found as current information in your Unit Health Record (UHR),
- A review of your UHR volumes 2 and 3 revealed a MRI of your neck done in 2008; which noted mild degenerative disc disease (DDD); having morphine for DDD was not indicated.
- On June 16, 2011, you had a medical evaluation by Dr. Gill with no acute finding of cervical or lumbar pain.
- You stated that you had documentation that a doctor ordered exercise; yet this documentation was not provided nor found.
- Surgery was not medically indicated; and you had pain medications of Tylenol and ibuprofen.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
At the Director's Level of Review (DLR), received on September 9, 2011, you added that California Department of Corrections and Rehabilitation (CDCR) threatened you

with a serious rule violation alleging that you were
threatening to sue staff, in an attempt to influence
staff, to gain morphine; you quoted "a plaintiff bringing
a malpractice case against a health care provider must
also give the defendant notice of the intention to sue 90
days before filing suit"; this was CDCR's notice; you
were going to sue all CDCR health care staff involved;
you were not allowed to attach copies of your medical
records.

At the DLR, your appeal file and documents obtained from
your UHR were reviewed by licensed clinical staff and
revealed the following:

- You received care for your complaints of pain;
  you were offered physical therapy and
  instructed to reduce your aggressive exercise
  program that was making your pain worse and
  use a more appropriate exercise regimen to
  stabilize your back and neck muscles, which
  would reduce your pain.
- You did not qualify for narcotic use under
  California Correctional Health Care Services
  Pain Management guidelines.
- You were offered anti-inflammatory medication
  for pain and provided instruction in
  appropriate exercise.

The gradual deterioration of the disc between the
vertebrae is known as degenerative disc disease. As we
age, the water and protein content of the cartilage in
the body changes, which results in more fragile and thin
cartilage. Both the discs and joints that stack the
vertebrae are composed of cartilage and subject to 'wear
and tear' over time. Hence, degenerative disc disease is
a term used. to describe the normal changes in your
spinal discs as you age.

To be noted there were several refusals in your UHR in
August 2011, in which you wished to discontinue
recommended medications; and refusal to be seen by
Dr. Gill. Be advised you have the right to refuse
treatment. While you may refuse care, you may not be
selective in the choice of providers. Provider

assignments are determined by health care management based on the institution's needs.

You are considered an active partner and participant in the health care delivery system. You are encouraged to cooperate with your clinicians in order to receive the proper care and management of your condition. You will continue to be evaluated and treatment will be provided based on your clinician's evaluation, diagnosis, and recommended treatment plan, in accordance with appropriate policies and procedures.

It is noted you have added new issues and/or requests to your appeal at the DLR, as noted above. It is not appropriate to expand the appeal beyond the initial problem and or requests. These issues will not be addressed, as you have not provided evidence that you attempted to address them at the lower level, per the California Code of Regulations (CCR), Title 15, Section 3084.1 (b). After review, there is no compelling evidence that warrants intervention at the Director's Level of Review as your medical condition has been evaluated by licensed clinical staff and you are receiving treatment deemed medically necessary.

**RULES AND REGULATIONS:**
The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures (2011); and the Department Operations Manual.

**ORDER:**
No changes or modifications are required by the institution.
This decision exhausts your available administrative remedies.[38]

The Supreme Court, holding that the infliction of unnecessary

suffering on prisoners violated the Eighth Amendment, stated:

---

[38]    Docket 1-3 at 1-3.

[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[39]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates the Constitution.[40] In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[41]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[42] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff

---

[39] *Estelle v. Gamble* 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks, and citations omitted).

[40] *Id.* at 106.

[41] *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[42] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[43]

Other than his own opinion, McNeil has produced no evidence to establish that either continuation of the morphine/gabapentin regimen or surgery were medically necessary. Viewing the allegations of the Complaint in the light most favorable to Plaintiff, at most, McNeil has shown that there is a mere difference of opinion regarding the course of medical treatment, which is "insufficient as a matter of law, to establish deliberate indifference."[44] Thus, McNeil has failed to establish that the

_____

[43] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

[44] *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996);
(continued...)

prescribed course of treatment constituted a deliberate indifference to a serious medical condition. Accordingly, the Complaint against the medical personnel at PVSP will be dismissed for failure to state a cause of action.

### 4.   Second Incarceration at SATF

During his short second incarceration at SATF, McNeil submitted several requests to be seen by a doctor for his pain. According to McNeil, when he went to the medical clinic at SATF to check on the status of his requests, LVN Ayoctele was abusive and threatened him with a CDC-115, Rules Violation Report. How this somehow violated McNeil's civil rights is both unexplained and inexplicable.[45]

McNeil also alleges that the Physicians Assistant Byers and Dr. Onyeje refused to renew his prescription for morphine and

---

[44](...continued)
*see Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting, also, that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a viable claim of deliberate indifference).

[45]    It does not appear from the Complaint or the voluminous exhibits attached to it that McNeil pursued any administrative remedy as to this claim.

gabapentin. McNeil's adminsitrative grievance was denied at the

Director's Level.[46]

**I   APPELLANT'S ARGUMENT:** The Appellant claimed in
November 2010 his pain was under control, and he engaged
in exercise by hitting the punching bag at a ·previous
institution. He claimed a Correctional Officer (CO)
observed him, made a video of the activity, illegally
obtained confidential medical information, and issued a
CDC Form 128-B, General Chrono, for manipulation of staff
to obtain morphine medication. He claimed this CO and
another officer influenced Dr. Singh and other medical
staff to discontinue all pain treatment and remove the
Disability Placement Program (DPP) code of Mobility
Impaired Not Impacting Placement (DNM). He noted he has
numerous doctors' orders, which indicate he should
exercise as part of his Physical Therapy regimen. The
appellant requested accommodation, including: (1)
Reinstatement in the OPP; (2) Investigation into staff
involvement for termination of pain management, and
determination of the method of obtaining access to his
medical records; and (3) Investigation into the
involvement of Drs. Igbinosa and Singh "in this scheme"
to deny medical treatment; and (4) Notification to those
named above that they are named as defendants in a future
civil rights suit.

**II   SECOND LEVEL'S DECISION:** The reviewer noted on
April 12, 2011, T. Byers, Physician Assistant (PA),
interviewed and evaluated the appellant for his issues on
appeal. The appellant was informed this CDCR Form 1824,
Reasonable Modification or Accommodation Request, will
only address the request for disability evaluation via
CDC Form 1845, Disability Placement Program Verification
(DPPV). Matters pertaining to staff issues at another
institution are not Americans with Disabilities Act (ADA)
issues and will not be addressed in this response on
appeal. The PA noted the "I/P immediately told me I was
named in a Federal lawsuit"  The PA also noted the
appellant was observed in a video, "performing strenuous

---

[46]    Authored by Defendants C. Hammond and D. Foston.

activities and has not had any acute injuries since
then." As the PA saw him in the clinic for DPP
evaluation, medication issues were not to be addressed;
however, the appellant continued to talk about pain
management, and he was referred to the facility primary
care provider (PCP) to address medication issues. The PA
found no indication for lower bunk/lower tier housing
restriction, and noted the appellant ambulated from the
room with a steady, upright gait The response provided to
the appellant was reviewed and approved by the
Correctional Health Services Administrator II (CHSA-II).
As the appellant expressed disagreement with the
determination made by the PA, the Office of the Chief
Medical Officer completed comprehensive review of the
issues on appeal. All submitted documentation and
arguments have been considered. Further review noted on
April 27, 2011, O. Onyeje; MD, PCP, saw the appellant for
neck, bilateral shoulder, and lower back pain. The doctor
noted the previous incident at the Pleasant Valley State
Prison, in which strenuous activity recorded on the video
was inconsistent with the claimed degree of disability.
The doctor's progress notes indicated the appellant has
chronic neck and lower back pain, secondary to
degenerative disk disease; however, he was able to
ambulate easily while getting up-and-down from the
examination table. In addition, the doctor noted the
appellant has normal power in all limbs, with normal knee
jerk bilaterally, no muscle atrophy, and no observed
painful distress. The case was presented to the Medical
Authorization Review Committee for evaluation, and the
appellant was scheduled for follow-up in 60 days. The
doctor found no medical indication for placement in the
DPP at this time.

The appellant provided no additional information
regarding his medical condition that was not available to
the PA at the time of examination on April 12, 2011;
therefore, the decision rendered at the previous level of
review was upheld. Upon completion of review, the CEO
concurred with and approved the determination made in
this case. The appeal was denied at the Second Level of
Review on May 13, 201[1].

III  **DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

**A.   FINDINGS:** In requesting a Director's Level of Review (DLR), the appellant claimed PA Byers has a conflict of interest in this case, because on September 23, 2010, he named the PA as a defendant in a civil rights law suit for previous deliberate indifference to serious medical needs. He requested to have someone else interview him, but the PA denied the request.  He claimed his neck injury caused partial paralysis in the right arm five times in the last three years, and he is still in extreme pain.  He also claimed since the suit was filed, the CDCR retaliated against him and interfered with his medical treatment.

In reaching a decision at the DLR, the appellant's assertion is refuted, as he provided no rationale as to the reason he allowed PA Byers to examine him on April 23, 2011, if this clinician showed previous deliberate indifference to his serious medical needs as claimed.  He is fully aware he is permitted to refuse medical treatment in accordance with the California Code of Regulations, Title 15 {CCR). Moreover on April 27, 2011, his PCP examined him and determined he does not meet the criteria for entry into the DPP with any designation of disability.  Medical necessity was not established for housing restriction, physical limitations to job assignment, or authorization for medical appliances at this time.  Upon review, the CHSA-II and the CEO concurred with and endorsed the action taken in this case. An accommodation must be deemed medically necessary by the current medical staff in charge of the appellant's care. Pursuant to the CCR 3350{b)(l), "Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care." The appellant's health care concerns are not ADA issues and will not be addressed in this response at the DLR.

The appellant is reminded the CCR 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness or other conditions, and prescribe treatment or disability accommodation for inmates. It is not appropriate to self-diagnose problems and expect a clinician to implement the appellant's recommendation for a course of treatment. In this particular matter, the appellants contention that he was not afforded appropriate care or accommodation is not substantiated by records and professional health care staff familiar with his history. He is informed that if he is experiencing symptoms of discomfort. he should address his concerns to the attention of his PCP.

Although the appellant claimed retaliation and deliberate indifference to his medical needs, he provided no evidence or documentation to substantiate these allegations. After consideration of the evidence and arguments herein, it has been determined that staff acted appropriately on the appellant's request, and no additional accommodation is warranted at the DLR.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Fonn, Sections A and B).

**B.   BASIS FOR THE DECISION:**
Armstrong Remedial Plan: ARPI, ARII.A. ARPII.B, ARPIV.B.1, ARPIV.B.2
CCR: 3085, 3350, 3350.1, 3354

**C.   ORDER:**   No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.[47]

These claims fail for the same reason as did McNeil's claim against the medical personnel at PVSP, i.e., viewing the allegations of the Complaint in the light most favorable to Plaintiff, at most, McNeil has shown that there is a mere difference of opinion regarding the course of medical treatment, which is "insufficient as a matter of law, to establish deliberate indifference."[48] Thus, McNeil has failed to establish that the prescribed course of treatment constituted a deliberate indifference to a serious medical condition.

### 5.   Incarceration at CSP-C

The record reflects that after his transfer to CSP-C, McNeil refused to be treated by Dr. Gill. Indeed, in his Complaint McNeil affirmatively states:  "Plaintiff [McNeil] then told defendant Dr. Gill that now, he only cared about sueing [*sic*] the department (CDCR) and its medical staff for causing plaintiff to live in pain and suffering."[49] The record further reflects that, although Dr. Gill did not recommend resumption of treatment by morphine, he did refer the matter to the Pain Committee, which found:

---

[47]     Docket 1-3 at 152-54.

[48]     *Jackson*, 90 F.3d at 332; *see Franklin*, 662 F.2d at 1344.

[49]     Docket 1 at 72, ll. 3-5.

CONSULTING PROVIDER:   Edgar Clark, MD
DATE OF CONSULTATION:  09/01/2011
REASON FOR CONSULTATION:  PAIN COMMITTEE REVIEW
HISTORY OF PRESENT ILLNESS:  This is a 47-year-old man
who is complaining of right cervical pain and right
lumbar pain. He says he was on morphine and was tapered
off morphine at Pleasant Valley State Prison and he has
a lawsuit against them.  He says he has constant pain
radiating down his right arm and also his right leg.  He
is unable to work because of the pain.  He said he had
been on morphine for more than 10 years, The Unit Health
Record (UHR) shows that he was tapered off morphine at
Pleasant Valley State Prison after being filmed
vigorously exercising, carrying large amounts of weight
and then using the punching bag and punching it very
vigorously.  He told his primary care physician that he
is more interested in money than in morphine and said
that everybody associated with his decisions and care
would be sued.

OBJECTIVE FINDINGS:  He is very well-muscled.  There are
no neurologic abnormalities found.  Deep tendon reflexes
are normal. His strength is normal, but he did have
overreaction to light touch during examination of the
right lumbar area and also on axial loading. The axial
loading is a positive Waddell sign. There was also a
positive Waddell sign on a protracted straight leg
raising.

Physical Therapy evaluation:  The patient brought in a
list of the exercises that he did. According to the
physical therapist, this was overexercise and also the
sorts of exercises were actually probably precipitating
some of his pain. He refused any modification in his
program and his physical examination was inconsistent
with his complaints.

Mental Health examination, he refused to interview. He
said he was taking the Fifth Amendment on all questions,
but he also said that he was doing this for the money
from a lawsuit that he had filed against the CDC.
His C-File showed no substance abuse history.

DIAGNOSTIC DATA:  No radiologic studies were available.

ASSESSMENT/RECOMMENDATIONS: The Committee weighed all of
the evidence and it did nor appear to them that the
patient's symptoms were consistent with the physical
findings and his exercise activity and therefore the
consensus was that no opiates or gabapentin were
indicated at this time.[50]

Reduced to their essence, McNeil's allegations against
Physical Therapist Brawn are that he recommended that McNeil cease
some of the exercises based upon Brawn's opinion that those
exercises were the cause of some of McNeil's pain. How that
constitutes deliberate indifference is both unexplained and
inexplicable.

McNeil's joinder of the psychologist, Dr. Ruff, is even more
puzzling. McNeil alleges that Dr. Ruff McNeil refused to sign a
document that barred the psychologist from using any of the
information obtained in at a later time, e.g., a parole hearing,
ostensibly invoking his Fifth Amendment rights. Based upon
Dr. Ruff's refusal to sign the requested document, McNeil refused
to undergo a psychological evaluation.  McNeil's position fails on
at least two points.  First, there is no recognized Fifth Amendment
right to excluding relevant medical or psychological evidence at a

---

[50]     Docket 1-5 at 32.

parole hearing.[51]  Second, as with other allegations, how Dr. Ruff's

actions constituted deliberate indifference is a mystery.

McNeil's administrative grievance was denied at the Director's

Level.[52]

> **I.   APPELLANT'S ARGUMENT:**   The appellant stated he
> arrived at the institution in May 2011 and needs to see
> a doctor, due to degenerative disk disease.  He noted
> Custody Staff are trying to move him to an upper bunk;
> however, he has been on a lower bunk since 2001 due to
> disease.  He noted he is in pain and is having problems
> walking and sleeping. He claimed this condition has not
> been properly treated since February 2011, this is his
> third prison since March 2011, and Medical Staff have
> refused to treat the pain properly.  He claimed this is
> notice to the Chief Medical Officer and other Medical
> Staff that he is suing.  The appellant requested
> accommodation, to include: (1) Appointment with a doctor
> ASAP [as soon as possible]; (2) Treatment for pain; and
> (3) Renewal of the lower bunk chrono .
>
> **II.   SECOND LEVEL'S DECISION:** The reviewer noted on
> June 15, 2011, R. Gill, DO, interviewed and evaluated the
> appellant for his issues on appeal. Upon physical
> examination, the doctor found no mobility problems, as
> the appellant maintains a normal gait; therefore, medical
> treatment for walking problems was unnecessary, and his
> medical condition does not warrant renewal of the
> chronos. The response provided to the appellant was
> reviewed and approved by the Chief Physician & Surgeon.
> As the appellant expressed disagreement with the
> determination made in this case, the Office of the Chief
> Executive Officer (CEO) assigned the Office of the Chief
> Medical Executive (CME) to complete comprehensive review
> of the appellant's issues on appeal. All submitted
> documentation and arguments have been considered. The

---

[51]    *See, e.g., Hess v. Board of Parole and Post-Prison
Supervision*, 514 F.3d 909, 914–15 (9th Cir. 2008).

[52]    Authored by Defendants C. Hammond and D. Foston.

appellant reiterated his complaint of continuing pain and
threat no file a lawsuit. Upon further review, the
appellant was informed he has the right to file a
lawsuit, and the medical staff respects and supports his
right to take such action; however, in accordance with
the California Code of Regulations, Title 15, Section
(CCR) 3013, Unlawful Influence, which states, "Inmates
shall not attempt to gain special consideration or favor
from other inmates, employees, institution visitors or
any other person by the use of bribery, threat or other
unlawful means."  This includes the threat of legal
action.  If the appellant believes he will be granted
special accommodation or narcotic pain medication by
threatening staff with civil action, he is sorely
mistaken.  We will not be intimidated by such behavior,
and if it persists, other measures will be seriously
considered. He has the responsibility to treat others as
he wishes to be treated.   The CCR 3004(a) states,
"Inmates and parolees have the right to be treated
respectfully, impartially, and fairly by all employees.
Inmates and parolees have the responsibility to treat
others in the same manner."

As the appellant was seen by a doctor, but did not
receive the medication or chronos requested, the request
on appeal was partially granted.   The health care of
inmates is one of the highest concerns of the Department,
and this institution endeavors to provide appropriate
medical care commensurate with community standards for
health care.  The appeal was partially granted at the
Second Level of Review on June 3, 2011.

**III   THIRD LEVEL DECISION:**  Appeal is denied.

    **A.   FINDINGS:**  In requesting a Third Level Review
(TLR), the appellant expressed continued
dissatisfaction and claimed he does not want pain
medication.  He stated, "Now I want surgery. I am
still suffering from extrem(e) pain."

    In reaching a decision at the TLR, the appellant's
assertion is refuted, as he was appropriately and
thoroughly examined by a CDCR staff physician, who
completed a medical evaluation of his Americans
with Disabilities Act (ADA) capabilities on

June 15, 2011, and determined he did not have a
mobility impairment condition that warranted
accommodation under the Armstrong Remedial Plan
(ARP).  Moreover, the case was further evaluated
and reviewed by the CME and the CEO, who determined
medical chronos and pain medication were not
medically necessary at this time.

An accommodation must be deemed medically necessary
by the current medical staff in charge of the
appellant's care. In accordance with the California
Code of Regulations, Title 15, Section (CCR),
3350(b)(1), "Medically Necessary means health care
services that are determined by the attending
physician to be reasonable and necessary to protect
life, prevent significant illness or disability, or
alleviate severe pain, and are supported by health
outcome data as being effective medical care."  The
term "accommodation" indicates the possible need
for adjustment, adaptation, and change.  Although
the appellant was previously afforded
accommodation, medical justification must be
established for continued accommodation, and in
this case, accommodation was not found medically
necessary in accordance with health care policy and
procedure.

The appellant is reminded the CCR 3354 establishes
that only qualified medical personnel shall be
permitted to diagnose illness or other conditions,
and prescribe treatment or disability accommodation
for inmates.  It is not appropriate to self-
diagnose problems and expect a clinician to
implement the appellant's recommendation for a
course of treatment.  In this particular matter,
the appellant's contention that he was not afforded
appropriate accommodation is not substantiated by
records and professional health care staff familiar
with his history.  He is informed that if he is
experiencing symptoms of discomfort, he should
address his concerns to the attention of his
primary care provider (PCP).

The appellant is also informed an ADA appeal must
involve a request for access or participation in a

program, service, or activity, in which the inmate
claims access or participation is impaired or
limited due to a disability; therefore, the request
for reasonable modification or accommodation. The
issue regarding prescription of pain medication is
not an ADA issue in this case, and he is informed
he must submit a CDCR Form 7362, Health Care
Services Request, to discuss this issue with his
PCP, as only this provider is authorized to order
medical treatment for him. If not satisfied with
the services thus rendered, he may submit a CDCR
Form 602-HC, Inmate/Parolee Health Care Appeal
Form, to address his concerns.

After consideration of the evidence and arguments
herein, it has been determined that staff acted
appropriately on the appellant's request, and no
additional accommodation is warranted at the TLR,
The appellant has added new issues and requests to
his appeal. The additional requested action is not
addressed herein as it is not appropriate to expand
the appeal beyond the initial problem and the
initially requested action (CDC Form 602,
Inmate/Parolee Appeal Form, Sections A and B).

**B.   BASIS FOR THE DECISION:**
ARP: ARP-I, ARPII.A, ARPIV.B., ARPIV.B.2, ARPIV.F.2
CCR: 3004, 3013, 3085, 3350, 3350.1, 3354, 3358

**C.   ORDER:**   No changes or modifications are
required by the Institution.

This decision exhausts the administrative remedy
available to the appellant within CDCR.[53]

These claims fail for the same reason as did McNeil's claim
against the medical personnel at PVSP and SATF, i.e., viewing the
allegations of the Complaint in the light most favorable to
Plaintiff, at most, McNeil has shown that there is a mere

---

[53]   Docket 1-4 at 93-95.

difference of opinion regarding the course of medical treatment, which is "insufficient as a matter of law, to establish deliberate indifference."[54]   Thus, McNeil has failed to establish that the proscribed course of treatment constituted a deliberate indifference to a serious medical condition. Accordingly, the Complaint against the medical personnel at CSP-C fails to state a cause of action and must be dismissed.

### 6.   Receiver

Finally, McNeil challenges the action of J. Clark Kelso, the court-appointed receiver for CDCR,[55] in implementing new pain management procedures.  According to McNeil these procedures, which resulted in the cessation of his morphine/gabapentin treatment, were implemented to save money, not for the ostensibly stated purpose of making pain relief treatment safer and more consistent in all prisons.  McNeil makes this allegation on "information and belief."  The very documentation the McNeil attaches to his Complaint eviscerates McNeil's alleged information and belief. In responding to McNeil's inquiry, the Prison Law Office noted:[56]

---

[54]   *Jackson*, 90 F.3d at 332; *see Franklin*, 662 F.2d at 1344.

[55]   *Plata v. Brown*, Case No. 3:01-cv-01351-TEH (N.D. Calif.). A class action brought against the State concerning overcrowding and the quality of medical care in California prisons.

[56]   The attorneys representing the plaintiffs in *Plata*.

According to the Receiver in charge of CDCR medical care, PVSP primary care providers have prescribed significantly more narcotics than at each of the other prisons, even though the PVSP population does not have a higher percentage of prisoners who need pain medication, such as prisoners with chronic illness or significant injuries. In an attempt to make pain management treatment safer and more consistent in all the prisons, the Receiver is implementing new pain management guidelines. These guidelines are largely based on guidelines published by the Institute of Clinical Systems Improvement, the Veterans Administration, the American Pain Society and the American Academy of Pain Medicine. The guidelines note that there is little medical evidence, if any, that shows that narcotic pain medications effectively treat chronic pain. They advise that doctors should very carefully consider any negative effects (e.g., health risks, addiction, and tolerance build-up) and any available alternatives when prescribing narcotics.

We are aware and concerned that many prisoners at PVSP are having a difficult time because their pain medication orders have recently been changed. Due to the letters we have received as class counsel in the Plata lawsuit, we have reviewed a substantial number of medical records of PVSP prisoners who have written that their pain medications have been discontinued since June 2010. In the medical records we have reviewed, primary care providers have almost always described in detail the medical justification for changing prescriptions, and we have not found evidence that providers have cut medications to save the prison money as alleged by many prisoners. However, please understand that as lawyers we do not have the medical expertise to determine whether the reasons documented in prisoners' medical records for changing prescriptions were medically appropriate, and we cannot advise you whether you have received constitutionally inadequate medical care.[57]

---

[57]    Docket 1-3 at 29.

Accordingly, the claim against the Court Appointed Receiver will also be dismissed.

**B.   Second Cause of Action [Invasion of Privacy]**

In his Second Cause of Action McNeil contends that his medical information was improperly disclosed to non-medical personnel in violation of the Fourteenth Amendment right to privacy and the provisions of the Health Insurance Portability and Accountability Act ("HIPAA"). The Ninth Circuit has rejected both arguments.[58] Accordingly, because it fails to state a cause of action, McNeil's Second Cause of Action will be dismissed without leave to amend.

**V.   CONCLUSION/ORDER**

McNeil's Complaint shows a history of refusing medical treatment based upon his own, personal opinion as to either his condition or the efficacy of the treatment prescribed.[59] The dearth of any supporting objective, competent medical evidence, coupled with McNeil's repeated threats of instituting lawsuits if his demands for treatment are not met, strips his federal constitutional claims of all foundation. Nor does it appear that

---

[58]    *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010).

[59]    *E.g.*, declining to consider surgery on at least two occasions and refusing medication because he felt that it was improper or medically harmful.  While it was clearly within McNeil's rights to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition.

DISMISSAL ORDER - 40
*McNeil v. Singh, et al.*, 1:12-cv-01005-RRB

McNeil can truthfully allege facts that would constitute a viable claim of deliberate indifference.  Accordingly, the Complaint will be dismissed without leave to amend.  To the extent McNeil alleges violations of California state law, this Court declines to exercise its supplemental jurisdiction over them.[60]

**IT IS THEREFORE ORDERED** that the Complaint is **DISMISSED** in its entirety without leave to amend for failure to state a claim upon which relief may be granted.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED** this 3rd day of May, 2013.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[60]     "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . .."  28 U.S.C. § 1367(c).

DISMISSAL ORDER - 41
*McNeil v. Singh, et al.*, 1:12-cv-01005-RRB